NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARYBETH WALZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>VERIZON BUSINESS NETWORK<br>SERVICES, INC.,<br><br>                    Defendant. | Civil Action No. 20-16241 (ZNQ) (JTQ)<br><br>OPINION |

QURAISHI, District Judge

THIS MATTER comes before the Court upon a Motion to Dismiss and Strike the First Amended Complaint filed by Defendant Verizon Business Network Services, Inc. ("Defendant").[1] (The "Motion", ECF No. 48.)  Defendant filed a brief in support of its Motion.  (Def.'s Moving Br., ECF No. 49.)  Plaintiff opposed Defendant's Motion, (Pl.'s Opp'n Br., ECF No. 56), to which Defendant replied (Def.'s Reply Br., ECF No. 57).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART Defendant's Motion to Dismiss and Strike.

---

[1] The Court pauses early in this Opinion to acknowledge its substantial delay in addressing this matter.  Plaintiff filed her initial Complaint in 2015, over a decade ago.  This case was transferred across two districts and assigned to four different district judges along the way.  Worse, this motion was fully briefed in August of 2021, but was thereafter mislaid.  It was only through the patient persistence of Plaintiff's counsel's letters that it was brought to the undersigned's attention.  For this, counsel has the Court's appreciation.  For Plaintiff herself, the Court offers its sincere and overdue apology.

I.      **<u>BACKGROUND AND PROCEDURAL HISTORY</u>**[2]

Plaintiff Marybeth Walz ("Plaintiff") began working for Defendant in 1997.  (First Amended Complaint ("FAC") ¶ 12, ECF No. 44.)  In July 2013, Plaintiff learned she would be expecting twin sons through gestational carrier.[3]  (*Id.* ¶¶ 20–22.)  One month later, Plaintiff approached Defendant's Human Resources department in preparation for the birth of her sons. (*Id.* ¶ 28.)  Human Resources explained that Plaintiff would be ineligible for paid maternity leave because her sons would be born by gestational surrogacy.  (*Id.* ¶ 29.)  Human Resources instead provided Plaintiff with documentation for unpaid leave under the Family and Medical Leave Act ("FMLA").  (*Id.* ¶ 31.)  During this conversation, Plaintiff contends Human Resources "chastised her" for not adopting her sons because if she had, she would be eligible for Defendant's $10,000 adoption bonus program.  (*Id.* ¶ 32.)  Plaintiff explained that she did not need to adopt her sons because they were her biological children and that she was infertile, necessitating a gestational surrogate.  (*Id.*)  Plaintiff avers that Human Resources also failed to inform her that she would be eligible for up to six weeks of compensation under the New Jersey Family Leave Act.  (*Id.* ¶ 35 n.1.)

The pregnancy did not fare well.  In October 2013, Plaintiff's gestational surrogate went into pre-term labor, sixteen weeks early.  (*Id.* ¶ 37.)  Plaintiff went to North Carolina, where the surrogate resided, and planned to remain there until a few weeks after her sons were born while she worked remotely for Defendant.  (*Id.* ¶ 38.)  A few weeks later, on November 19, 2013, Plaintiff's sons were born twelve and a half weeks early by way of emergency Cesarian section. (*Id.* ¶ 39.)  Plaintiff's sons were thereafter placed in the Neonatology Unit and remained on

---

[2] The Court accepts the factual allegations in Plaintiff's FAC as true and draws all inferences in the light most favorable to Plaintiff.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).
[3] Plaintiff's sister-in-law agreed to serve as the gestational surrogate.  (FAC ¶¶ 13–14, 19.)

ventilators. (*Id.* ¶ 40.)  The next day, Plaintiff learned that one of her sons suffered a pulmonary hemorrhage and passed away. (*Id.* ¶¶ 41–43.)  The other son remained in critical condition. (*Id.* ¶ 43.)  In January 2014, Plaintiff informed Defendant of these events in an effort to explore options that would enable her to extend her leave. (*Id.* ¶¶ 44–45.)

In January 2014, Defendant twice transferred Plaintiff to a different location, and, as a result of the transfers, Plaintiff alleges that she lost her accounts. (*Id.* ¶¶ 46–47.)  That same month, Plaintiff's surviving son was diagnosed with infantile fibroid sarcoma. (*Id.* ¶¶ 50–51.)  Plaintiff remained in Philadelphia, Pennsylvania where her son underwent treatment at the Children's Hospital of Philadelphia. (*Id.* ¶¶ 50, 55–56.)  In February 2014, Plaintiff applied for, and was granted, FMLA leave and short-term disability leave benefits through May 16, 2014 and August 24, 2014, respectively. (*Id.* ¶ 55.)  Plaintiff was then diagnosed with Major Depressive Disorder. (*Id.* ¶ 54.)  Plaintiff's second son died in May of 2014. (*Id.* ¶ 57.)

Plaintiff, unable to immediately return to work, applied for long-term disability benefits with Metropolitan Life Insurance Company ("MetLife") with an estimated return date of January 2015. (*Id.* ¶ 62.)  On September 7, 2014, MetLife approved Plaintiff's long-term disability claim for up to two years. (*Id.* ¶ 63.)  Two days later, Plaintiff received a letter of termination from Defendant on September 9, 2014. (*Id.* ¶ 64.)

Against that backdrop, Plaintiff brings claims against Defendant for: (1) violations of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12112, *et seq.* (Count I); (2) disability discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq.* (Count II); (3) violation of the FMLA, 29 U.S.C. § 2612, *et seq.* (Count III); (4) violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Count IV); (5) sex discrimination in violation of the NJLAD (Count V); and (6) breach of the

implied covenant of good faith and fair dealing (Count VI). (*See generally id.*) Defendant moved to dismiss and strike certain allegations from the FAC. (ECF No. 48). Plaintiff opposed, (ECF No. 56), and Defendant replied. (ECF No. 57.)

## II.    SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff has asserted claims that arise under the federal laws of the United States. The Court has supplemental jurisdiction over Plaintiff's concurrent state law claims pursuant to 28 U.S.C. § 1367.

## III.    LEGAL STANDARD

### A.    MOTION TO DISMISS

Rule 8(a)(2) requires plaintiffs to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." [4]  Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

When considering a motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely

---

[4] All references hereinafter to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

The district court's role in reviewing the sufficiency of the complaint is simple: it does not determine "whether the plaintiffs will ultimately prevail," but rather "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## B.    MOTION TO STIKE

Rule 12(f) provides, inter alia, that the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. *See* Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to save time and expense through the excision of matter from the pleadings that will not affect the outcome of the case." *Ly Berditchev Corp. v. Truss Cosmetics Corp.*, Civ. No. 22-4242, 2023 WL 6307462, at *2 (D.N.J. Sept. 28, 2023) (quoting *Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 619 (D.N.J. 2000)). "Motions to strike are decided on the pleadings alone." *Deery v. Crystal Instr. Corp.*, Civ. No. 13-198, 2013 WL 4517867, at *1 (D.N.J. Aug. 26, 2013) (citations omitted). To succeed on a motion to strike, the moving party must show that the allegations in the complaint "have no possible relation to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues." *Garlanger*

*v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2009). The Court exercises "considerable discretion" in considering a Rule 12(f) motion to strike. *See id.* at 217.

## IV.   **DISCUSSION**

### A.  **MOTION TO DISMISS**

#### 1.    Disability Discrimination in Violation of the ADA (Count I)

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  It also prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).  The failure to accommodate a plaintiff's disabilities is a form of disability discrimination. *Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 39 (3d Cir. 2018).

Here, Plaintiff asserts three claims for discrimination under the ADA: (1) infertility discrimination; (2) discrimination by virtue of being associated with individuals with disabilities (her sons); and (3) the failure to accommodate her depression.  Plaintiff alleges that Defendant engaged in infertility discrimination by: (1) denying her of paid maternity leave; (2) chastising her for not adopting her twins; (3) failing to provide her with a packet of information for expecting

parents; and (4) treating her worse than biological mothers.[5]  (FAC ¶¶ 28–36, 74–75.)  Plaintiff further alleges that Defendant demoted her because of the need to care for her disabled sons.  (*Id.* ¶¶ 45–49, 73.)  Plaintiff finally alleges Defendant refused to grant her additional leave or offer a gradual return to work schedule given her depression diagnosis.  (*Id.*  ¶¶ 53–66, 79.)  As each form of disability discrimination entails different pleading standards, the Court begins with Plaintiff's claim for infertility discrimination.

To state a claim for disability discrimination under the ADA, a plaintiff must plausibly allege three elements: (1) plaintiff is disabled within the meaning of the ADA, (2) plaintiff is qualified for the job, with or without reasonable accommodations, and (3) plaintiff was subjected to an adverse employment decision as a result of discrimination.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

The Court finds that Plaintiff fails to allege that Defendant's conduct was motivated because of Plaintiff's infertility.  "Simply stating that one endured [ ] discrimination without presenting allegations suggestive of such conduct does not meet [the *Twombly* and *Iqbal*] pleading standards.'"  *Deserne v. Madlyn & Leonard Abramson Ctr. For Jewish Life, Inc.*, Civ No. 10-03694, 2011 WL 605699, at *2 (E.D. Pa. Feb. 16, 2011) (quoting *Funayama v. Nichia Am. Corp.*, Civ. No. 08-5599, 2009 WL 1437656 at *5 (E.D. Pa. May 21, 2009)).  Plaintiff's contention that Defendant excluded Plaintiff from receiving certain benefits because she was not the birth mother of her sons, without more, falls short of demonstrating discriminatory animus as to her

---

[5] As part of her ADA claim Plaintiff also briefly alleges that "Verizon retaliated against [her] for complaining about disability discrimination regarding her leave benefits, and about her demotion, in violation of the ADA."  (FAC ¶ 81.)  Defendant argues that Plaintiff's ADA retaliation claim fails to identify any protected activity she engaged in under the statute.  (Def's Moving Br. at 18 n.7.)  Plaintiff does not respond to this attack in her opposition brief.  Defendant is correct that a plaintiff must plead she was engaged in a protected conduct to plead a plausible retaliation claim.  *See Cottrell v. Good Wheels*, 458 F. App'x 98, 100 (3d Cir. 2012).  Given the brevity of Plaintiff's allegation and her lack of response, however, it is unclear whether Plaintiff intended to waive the retaliation aspect of her ADA claim.  Accordingly, the Court will dismiss that portion of her claim but will do so without prejudice.

infertility.  Plaintiff therefore cannot state a claim for infertility discrimination.  The Court next addresses Plaintiff's associational disability discrimination claim.

While the Third Circuit has yet to adopt a pleading standard with respect to associational disability discrimination, a plaintiff must generally allege that:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; [and] (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 83 n.8 (3d Cir. 2019) (non-precedential).

The Court finds that Plaintiff has not pled facts from which the Court can adduce that Defendant demoted her because of her sons' disabilities.  *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009).  Nor has Plaintiff alleged that Defendant demoted her based on "unfounded stereotypes and assumptions arising from" Plaintiff's relationship with her disabled sons.  *Tyson v. Access Servs.*, 158 F. Supp. 3d 309, 314 (E.D. Pa. 2016).  By Plaintiff's own admission, she suffered an alleged adverse employment action only because of the need to care for her sons.  But the ADA's associational provision makes "a material distinction between [adversely affecting] an employee because of a relative's disability and [adversely affecting] an employee because of the need to take time off to care for the relative." *Erdman*, 582 F.3d at 510.  Given that Plaintiff has not alleged that Defendant's decision was motivated because of her sons' disabilities, *id.*, Plaintiff cannot state a claim for associational disability discrimination.

The Court finally turns to Plaintiff's failure to accommodate claim. To state a failure to accommodate claim, a plaintiff must allege: "(1) [s]he was disabled and [her] employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith

8

effort to assist; and (4) [s]he could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006).

The Court finds that Plaintiff has not sufficiently pled that she requested an accommodation and that Defendant failed to make a good faith effort to accommodate her. As alleged, Plaintiff neither informed Defendant of her major depression nor requested a reasonable accommodation from Defendant. *See Taylor*, 184 F.3d at 313 ("The employer must know of both the disability and the employee's desire for accommodations for that disability.") Without providing Defendant with notice of her depression, Defendant had no duty to engage in the interactive process in finding her a reasonable accommodation. *Id.* at 317 (observing "an employer who has received proper notice cannot escape its duty to engage in the interactive process"); *see also Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165–66 (5th Cir. 1996) (finding employer had no duty to engage in the interactive process where employee did not offer information about his bipolar disorder to employer). Furthermore, insofar as Plaintiff contends extended leave was a reasonable accommodation,[6] Plaintiff does not allege facts demonstrating that Defendant denied her leave time after the request was made or otherwise acted in bad faith. The omission of such facts renders Plaintiff's failure to accommodate claim insufficiently pled. *See Whelan v. Teledyne Metalworking Prods.*, 226 F. App'x 141, 147 (3d Cir. 2007) (explaining that the "failure to participate in the interactive process is not a ground for liability unless . . . a reasonable accommodation existed and the employer unreasonably failed to provide it").

The Court will dismiss Count I without prejudice.

---

[6] The Third Circuit has recognized that, in some instances, a temporary or intermittent leave of absence may constitute a reasonable accommodation. *See, e.g.*, *Capps v. Modelez Glob., LLC*, 847 F.3d 144, 156–57 (3d Cir. 2017) ("[A] request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA"); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004) (recognizing a leave of absence as a reasonable accommodation under the ADA so long as it "would enable the employee to perform his [or her] job functions in the near future"); *but see Fogleman v. Greater Hazleton Health Alliance*, 122 F. App'x 581, 585 (3d Cir.2004) (holding that an indefinite leave "does not constitute a reasonable accommodation").

2.    FMLA Interference and Retaliation (Count III)

The FMLA entitles eligible employees to a "total of 12 work weeks of leave during any 12-month period" for certain medical or familial reasons.  29 U.S.C. § 2612(a)(1).  An employer may be held liable for interfering with an employee's FMLA rights or for retaliating against an employee exercising his or her FMLA rights.  *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 318 (3d Cir. 2014).

Plaintiff brings two claims under the FMLA—one for interference and the other for retaliation.  In support of her claims for interference and retaliation, Plaintiff alleges that she informed Defendant of her intent to remain on leave in December 2013 through January 2014. (FAC ¶¶ 44–45.)  In mid- to late-January 2014, she was twice transferred to different offices. (*Id.* ¶¶ 46–47.)  One month later, Plaintiff applied for FMLA leave—for the first time—and was granted FMLA leave through May 16, 2014.  (*Id.* ¶ 55).  Defendant then terminated Plaintiff in September 2014.  (*Id.* ¶ 64.)  While interference and retaliation are related, they are governed by distinct legal standards.  The Court begins with Plaintiff's interference claim.

To state a claim for FMLA interference, a plaintiff must allege that:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017).

The Court finds Plaintiff cannot state a claim for FMLA interference because Defendant did not deny her FMLA leave.  "[T]o assert a claim of deprivation of entitlements, the employee only needs to show that [s]he was entitled to benefits under the FMLA and that [s]he was denied them."  *Callison v. City of Phil.*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a),

10

2614(a)).  In other words, "for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014); *accord Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004) (stating FMLA interference claim entails proof that employer made employee "unable to exercise that right in a meaningful way, thereby causing injury").  By Plaintiff's own admission, she was granted FMLA leave in February 2014.  Plaintiff has not alleged that Defendant failed to provide her with the entitlements afford by the FMLA, and as such, Plaintiff has not adequately pled an FMLA inference claim.

The Court turns to Plaintiff's retaliation claim.  To state a claim for FMLA retaliation, Plaintiff must establish that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburg Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (citing *Erdman*, 582 F.3d at 508–09).

The Court finds that Plaintiff cannot establish that her termination was causally related to the invocation of her FMLA rights.  To establish causation, a plaintiff must allege facts "sufficient to create an interference that a causative link exists between her FMLA leave and her termination." *Id.* at 307 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–81 (3d Cir.2000)).  "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality[.]" *Id.* (internal quotations omitted) (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir.2007)).  "Where the temporal proximity is not unusually suggestive, we ask whether 'the proffered [facts], looked at as a whole, may suffice to raise the inference." *Id.* (internal quotations omitted) (quoting *LeBoon*, 503 F.3d at 232).

11

As alleged, Plaintiff was terminated in September 2014, four months after her FMLA leave expired.  The timing of Plaintiff's termination, standing alone, is not unduly suggestive.  *See, e.g.*, *Wright v. Providence Care Ctr.*, LLC, 822 F. App'x 85, 95 (3d Cir. 2017) (finding a period two to three months not unusually suggestive timing); *Schummer v. Black Bear Distrib. Inc.*, 965 F. Supp. 2d 493, 499 (D.N.J. 2013) (approximately one month found not unduly suggestive); *Palen v. Alcan Packaging*, 511 F. Supp. 2d 445, 449 (D.N.J. 2007) (three months found not unduly suggestive); *Duncan v. Chester Cnty. Hosp.*, 677 Fed. App'x 58, 62 (3d Cir. 2017) (thirty-four days found not unduly suggestive).  Plaintiff has otherwise not alleged facts demonstrating Defendants engaged in a pattern of antagonism between the time she took FMLA leave and her termination.  *See Boyd v. Riggs Distler & Co.*, Civ. No. 20-14008, 2022 WL 17991037, at *6 (D.N.J. Dec. 29, 2022).  Accordingly, Plaintiff does not adequately state a claim for FMLA retaliation.

The Court will therefore dismiss Count III without prejudice.

### 3.    Sex Discrimination Under Title VII (Count IV)

Under Title VII, an employer cannot "discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  The Pregnancy Discrimination Act ("PDA") amended Title VII to expand "the terms 'because of sex' or 'on the basis of sex' [to] include . . . because of or on the basis of pregnancy, childbirth, or related medical conditions[.]"  42 U.S.C. § 2000e(k).

Here, Plaintiff brings two claims for sex discrimination under Title VII.  The first is for sex stereotyping, which is a form of gender discrimination.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (noting that Title VII was "intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.").  The second claim is for pregnancy discrimination, which is also form of sex discrimination under Title VII.  *Konate v.*

12

*Actalent, Inc.*, Civ. No. 23-4210, 2025 WL 289212, at \*3 (D.N.J. Jan. 24, 2025). Here, Plaintiff alleges that in August 2013 she notified Defendant she was expecting twins by gestational surrogacy and that she was infertile. (FAC ¶¶ 28–30.) Plaintiff alleges Defendant informed her that she was not eligible for paid maternity leave and that Defendant failed to inform her of additional benefits for expecting parents or new mothers. (FAC ¶¶ 29–33, 60, 92–93, 106.) As both claims are governed by different pleading standards, the Court turns to Plaintiff's sex stereotyping claim.

To state a prima facie claim for sex discrimination under Title VII, a plaintiff must allege: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

The Court finds that Plaintiff does not plead facts giving rise to an inference of intentional discrimination. To establish the inference of discrimination, a plaintiff must allege facts demonstrating: (1) that similarly situated employees outside of her protected class were treated more favorably under similar circumstances; or (2) a causal nexus between her membership in a protected class and the adverse employment action. *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014). Although Plaintiff alleges her conversation with a Human Resources employee had a change of tone after Plaintiff explained she was having children through a gestational surrogate, (FAC ¶ 29), Plaintiff does not plead any non-conclusory facts to demonstrate that she was denied the same privileges and conditions of employment because of her non-conformity with gender stereotypes or the traditional family unit. She points to no remarks, statements, or actions made by Defendant demonstrating discriminatory animus because she was

13

not conforming to traditional stereotypes of motherhood. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (holding that the "stereotypical remarks about the incompatibility of motherhood and employment can certainly be evidence that gender played a part in an employment decision" (internal quotation marks omitted)); *see also Tingley-Kelley v. Trustees of Univ. of Pa.*, 677 F. Supp. 2d 764, 777 (E.D. Pa. 2010) (finding the plaintiff pointed to direct evidence in support of her Title IX gender discrimination claim where "stereotypical comments" regarding her "childcare responsibilities" and "status as a mother with young children" were considered in the university's denial of the plaintiff's application to veterinary school). Plaintiff, therefore, does not plead a plausible claim for sex discrimination on a sex stereotyping theory.

The Court turns to Plaintiff's claim for pregnancy discrimination. To establish a prima facie case of discrimination based on pregnancy, a plaintiff must show: (1) the employee was pregnant, and the employer knew; (2) the employee was qualified for the job; (3) the employee suffered an adverse employment decision; and (4) there was a nexus between her pregnancy and the adverse employment decision that would allow a fact-finder to infer discrimination. *Konate*, 2025 WL 289212 at\*4 (citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008)).

Under the circumstances alleged in the FAC, taken as true, Plaintiff's infertility precludes her from stating a pregnancy discrimination claim. *See Saks v. Franklin Covey Co.*, 316 F.3d 337, 346 (2d Cir. 2003) (holding "infertility standing alone does not fall within the meaning of the phrase 'related medical conditions' under the PDA" because "the exclusion of surgical impregnation procedures disadvantages infertile male and female employees equally"). As alleged, Plaintiff was not pregnant at the time she suffered an adverse employment action. Nor did Plaintiff allege that she was undergoing treatment for her infertility. *See Govori v. Goat Fifty,*

14

*L.L.C.*, Civ. No. 10-8982, 2011 WL 1197942, at *3 (S.D.N.Y. Mar. 30, 2011) (explaining that when an employer fires a "female employee for missing work for IVF treatment, [the employer] discriminates not on the basis of reproductive capacity or infertility alone, but on the basis of medical conditions related to pregnancy. Thus, women who are fired for undergoing IVF are protected from such discriminatory, sex-based action by the terms of the PDA."). Plaintiff therefore cannot proceed with a sex discrimination claim predicated upon a pregnancy discrimination theory.

The Court will dismiss Count IV without prejudice to the extent Plaintiff asserts sex discrimination based upon non-conformity with traditional gender-based stereotypes. However, having determined that Plaintiff was neither pregnant nor had a medical condition stemming from pregnancy, the Court will dismiss with prejudice Plaintiff's pregnancy discrimination claim under Title VII. This is because the Court finds that any attempt to amend the pregnancy discrimination claim would be futile given the facts alleged. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d. Cir. 2002) (noting that a court should not dismiss a complaint with prejudice without providing leave to amend unless the amendment is inequitable or futile).

### 4. State Law Claims

As the Court will dismiss all of the federal claims raised in this matter over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims in Counts II, V, VI. *See* 28 U.S.C. § 1367(c)(3). Those claims will therefore be dismissed without prejudice.

**B.    MOTION TO STRIKE**

Defendant also moves to strike paragraphs 13 through 15, 17 through 22, 37 through 43, 50, 51, and 56 through 57 of the FAC on the basis that they describe details of Plaintiff's personal

15

life that are neither material nor pertinent to the actual claims raised in this matter.  (Def.'s Moving Br. at 21–22.)  Plaintiff opposes and contends that the factual allegations provide germane context to the claims she asserts in the FAC.  (Pl.'s Opp'n Br. at 24–25.)

As set forth above, motions to strike are highly disfavored.  They require a movant to show that the targeted allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or that they confuse the issues.  Measured against this heavy burden, Defendant's motion fails.  Plaintiff's challenged allegations describe the undeniably tragic events suffered by her and her sons, her financial struggles, and the context surrounding the agreement between Plaintiff and her gestational carrier.  Portions of the allegations may be attenuated from the facts that directly bear on Plaintiff's claims, but they do not stray so far as to bear "no possible relation" to the parties' controversy.  The allegations are uncomfortable to read, just as they were likely uncomfortable to write.  They also cast Defendant in an unfavorable light.  Still, they do not rise to the level of prejudice, nor are they likely to confuse the issues in dispute.  Accordingly, the Court will exercise its discretion to DENY the Motion to Strike.

## V.    **CONCLUSION**

For the reasons stated above, the Court will GRANT IN PART and DENY IN PART Defendant's Motion to Dismiss and Strike.  The Motion to Dismiss will be GRANTED.  Plaintiff's pregnancy discrimination claim under Title VII (part of Count IV) will be DISMISSED WITH PREJUDICE.  The remainder of her claims will be DISMISSED WITHOUT PREJUDICE.  The Motion to Strike will be DENIED.

The Court will grant Plaintiff leave to file a Second Amended Complaint, limited to addressing the deficiencies set forth in this Opinion within thirty days.  If no Second Amended

Complaint is filed by that deadline or Plaintiff fails to remedy the deficiencies set forth herein,

Plaintiff's claims may be dismissed with prejudice.  An appropriate order follows.

Date: May 15, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
